## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SKYBRIDGE SPECTRUM FOUNDATION,[1] | Case No. 16-10626 (CSS) |
| Debtor. | |

**Hearing Date: May 6, 2016 at 1:00 p.m.**
**Objections Due: April 29, 2016 at 4:00 p.m.**

### MOTION OF DR. ARNOLD LEONG TO DISMISS DEBTOR'S
### BANKRUPTCY CASE PURSUANT TO 11 U.S.C. §§ 1112(b) AND 305(a)

Dr. Arnold Leong ("Leong") hereby files his motion (the "Motion") to dismiss the

above-captioned bankruptcy case (the "Bankruptcy Case) filed by debtor Skybridge Spectrum

Foundation ("Skybridge" or the "Debtor"), or to abstain from exercising jurisdiction over the

Bankruptcy Case, pursuant to 11 U.S.C. §§ 1112(b) and 305(a). In support of his Motion, Leong

respectfully represents to the Court as follows:[2]

### PRELIMINARY STATEMENT

The admissions and representations made by Skybridge and Havens, its principal,

to both this Court and the Superior Court, which recently appointed a Receiver to take possession

and control of the FCC Licenses owned by Skybridge and the Related Entities, unequivocally

establish that this Bankruptcy Case was commenced in bad faith and accordingly must be

dismissed by this Court forthwith, with prejudice. Leong and Havens have been involved in

litigation and arbitration over the ownership of the FCC Licenses since 2002. In November of

---

[1] The last four digits of the Debtor's federal tax identification number are 8487. The Debtor's service address is 2509 Stuart Street, Berkeley, CA 94705.
[2] This Motion is supported by the following, concurrently filed pleadings: (a) the Request for Judicial Notice (the "RJN") in support of the motion, which attaches and defines various documents, pleadings and declarations referred to herein; (b) the Declaration of Richard M. Osman (the "Osman Declaration"); and (c) the Declaration of Susan L. Uecker (the "Uecker Declaration").

2015, the Superior Court in which Leong commenced his litigation against Havens ordered the appointment of a Receiver to take possession and control of the FCC Licenses owned by Skybridge and the Related Entities, to protect them from imminent harm, loss of value and potentially termination by the FCC. Thereafter, the Superior Court authorized the Receiver to sell certain FCC licenses owned by Skybridge, to avoid a significant loss to, if not complete destruction of, their value.

Havens responded by filing this Bankruptcy Case for the clear and unequivocal purpose of interfering with the activities of the Receiver and in an attempt to regain control of all of the FCC Licenses. Skybridge and Havens have admitted that the Debtor has no third party creditors and identify no valid reorganization purpose for the commencement of this case. Rather, Havens admits that the sole purpose of the filing is to enable him "to resume [the Debtor's] operations pursuant to [his] common business plan." However, the Bankruptcy Case may, at best, allow him to regain control of portions of FCC Licenses owned by Skybridge. Yet Havens has admitted that those licenses on their own are worth less than when aggregated with the FCC Licenses owned by the Related Entities (who are not the subject of this Bankruptcy Case).

The disputes framed by this Bankruptcy Case are primarily a two-party dispute between Leong and Havens over the ultimate ownership of the FCC Licenses. As noted above, that dispute has been pending in another forum for more than 14 years. That forum is more than capable of providing all of the relief necessary and appropriate to resolve this two-party ownership dispute. Havens has admitted that Skybridge and the Related Entities are all solvent

2

and therefore the rights of creditors are not in any way implicated by the pending ownership dispute.

For all of the reasons more fully set forth below, the Bankruptcy Case should be dismissed, with prejudice, or this Court should abstain from exercising jurisdiction over the Bankruptcy Case, in favor of the pending receivership proceeding before the Superior Court and the related Arbitration Proceeding.

## JURISDICTION

1.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and Leong confirms his consent pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. § § 1408 and 1409.

3.      The statutory predicate for the relief sought herein is sections 105(a), 305(a)(1), 349(a) and 1112(b) of the Bankruptcy Code and related Federal Rules of Bankruptcy Procedure.

**RELEVANT FACTS**

A.    **The Leong/Havens Litigation**

4.    Leong and Warren Havens ("Havens"), the purported president, sole director and sole member of Skybridge, have been in litigation regarding ownership of the assets of Skybridge and seven limited liability companies (collectively, the "Related Entities" and, together with Skybridge, the "Subject Entities") since 2002.

5.    Specifically, in 2002, Leong commenced an action (the "Action") before the Superior Court of the State of California, County of Alameda (the "Superior Court") against Havens, seeking to establish his rights in and to various spectrum licenses (the "FCC Licenses") and other assets owned by the Subject Entities.

6.    In pleadings filed in the Superior Court, Havens has summarized the dispute with Leong as being one of ownership and control over the FCC Licenses. "To a significant degree this is a dispute regarding business strategy, accompanied by a dispute over the existence and extent of Leong's interest." Sale Opposition [RJN, Ex. "11"], at page 2, lines 20-22. "Fundamentally it is a dispute regarding business strategy where the opposing views are Take the Money and Run versus Hold and Build." *Id.* at page 4, line 12.

7.    There is no dispute that Leong owns at least a 49.9% legal and beneficial interest in Telesarus Holdings GB LLC ("THL") and Telesarus-VPC LLC, now known as Verde Systems LLC ("VSL"). *See* Coburn Declaration [RJN, Ex. "2"], at ¶ 3, Ex. 1 and ¶ 4, Ex. 2.

8.    Further, there is clear documentation that AMTS Consortium LLC, now known as Environmentel, LLC ("ENL") is 100% owned by VSL (*see* Osman Declaration, ¶ 2,

4

Ex. "A"), although Havens contends that the Debtor holds a "substantial ownership interest" in ENL. *See* Havens First Day Declaration [RJN, Ex. 15], at ¶ 4.

9.      There is also no dispute that VSL, THL and ENL have, pursuant to so-called "charitable donation assignments" assigned "portions of licenses" owned by them to the Debtor, for no consideration. *See* Havens First Day Declaration [RJN, Ex. 15], at ¶ 4 and figure 1.

10.     The dispute framed by the Action was ordered into arbitration (the "Arbitration Proceeding") by the Superior Court in 2003 and, after many delays, the Arbitration recommenced in November of 2015 and is pending. Skybridge has represented to the Superior Court that the Arbitration Proceeding "will resolve the issues between [Leong and Havens] in an orderly fashion, on the merits." Subject Entities' Receivership Opposition [RJN, Ex. "2"], page 5, lines 9-10.

11.     In February of 2015, Leong filed a motion (the "Initial Receivership Motion") in the Superior Court, seeking the appointment of a receiver to take possession and control of, *inter alia*, all of the assets of the Subject Entities, including the FCC Licenses.

12.     In order to stymie the Initial Receivership Motion, Havens and the Subject Entities improperly removed the Action to the United States District Court, Northern District of California (the "District Court"), which promptly remanded the Action back to the Superior Court.

13.     Thereafter, in May of 2015, Leong renewed his receivership motion (the "Renewed Receivership Motion"). The Renewed Receivership Motion [RJN, Ex. "1"] again

5

sought the appointment of a receiver over all of the assets of, *inter alia*, the Subject Entities

(including the FCC Licenses) and was based on two primary factors.

14.    The first factor was the issuance on April 22, 2015 by the Honorable

Richard L. Sippel, the Chief Administrative Law Judge of the Federal Communications

Commission (the "FCC"), of a scathing order detailing Havens' extraordinary personal

misconduct and gross mismanagement (the "Sippel Order"). In addition to ordering Havens'

exclusion from a pending proceeding concerning certain licenses, Judge Sippel certified Havens'

"deliberate transgressions" and "otherwise contemptuous behavior" to the full Commission for

determination of whether Havens and the entities he controls are qualified to hold any of the

FCC Licenses (i.e., whether they meet the "character qualifications" necessary to hold the

licenses).

15.    The second ground for the appointment of a receiver was a litany of

ongoing fraudulent conduct and gross mismanagement by Havens relating to the Subject

Entities, including: the failure to properly report and account for the entities' activities; the

failure to timely file tax returns; the failure to properly and timely make necessary filings with

the FCC; and the diversion of significant assets from the Related Entities (in which Leong has an

interest) to Skybridge, whose sole purported member is Havens.[3]

16.    By order dated November 16, 2015 (the "Receivership Order"), the

Superior Court appointed Susan L. Uecker (the "Receiver") as receiver over all, or substantially

---

[3] In the Havens' First Day Declaration, Havens admits that he has diverted "portions of licenses" from the Related
Entities (including VSL, THL and ENL) to Skybridge by way of "charitable donation assignments." Havens First
Day Declaration, ¶ 1 (at p. 5 thereof).

6

all of the assets of Skybridge and the Related Entities, specifically including the FCC Licenses.
*See* Receivership Order [RJN, Ex. "9"].

17.    By order (the "Sale Order") entered February 26, 2016, the Superior Court
authorized the Receiver to sell certain of the FCC Licenses subject to imminent or past due
expiration or construction deadlines, including 129 "Location and Monitoring Service" licenses
held by Skybridge which are subject to a September 2016 deadline for construction. *See* Sale
Order [RJN, Ex. "12"].

18.    Havens caused Skybridge to file a bankruptcy petition (the "Voluntary
Petition") and commence this Bankruptcy Case exactly fourteen days later on March 11, 2016.
No motions or other relief were sought in connection with the filing of the Voluntary Petition. In
fact, so called "first day motions" were not filed until March 29, 2016, more than two weeks
after the filing of the Voluntary Petition. Leong contends that the Court need not consider these
motions on an expedited basis [Dkt. No. 38] and further contends that all of the relief sought is
without merit.

**B.    The Financial Condition of Skybridge and the Related Entities**

19.    Skybridge contends that it is a nonprofit entity, with Havens allegedly
acting as its president, sole director and "sole member." Havens First Day Declaration, ¶ 1.
However, Skybridge fails to disclose to this Court that its purported nonprofit status was
automatically revoked by the Internal Revenue Service, effective May 15, 2015, for failure to file
tax returns for three consecutive years.  Tax Status Revocation Notice [RJN, Ex. "17."])

7

20.    Skybridge maintains that it has "no owners" and that "if Skybridge is dissolved, its remaining assets will be distributed to either government entities or other IRC § 501(c)(3) exempt entities in accord with its tax-exempt public-benefit purposes." *See* Bolotnick Declaration [RJN, Ex. "7 "], at ¶ 6, page 3, lines 8-10. Skybridge is apparently "organized solely for charitable, scientific, and educational purposes." *Id.,* at ¶ 5.

21.    In opposition to the Renewed Receivership Motion, Skybridge and the Related Entities represented to the Superior Court that each and every one of them was "solvent and fully operating." Subject Entities Receivership Opposition [RJN, Ex. "2"], at page 13, line 11.

22.    In particular, Skybridge and the Related Entities submitted to the Superior Court the Declaration of Jose Nunez (the "Nunez Declaration"), wherein Mr. Nunez (the managing partner of Silicon Valley Accounting and Tax with personal knowledge regarding the financial condition of Skybridge and the Related Entities) testified that:

> Each of the Defendant Entities [the Subject Entities] is solvent and fully operating. In sum, solvency is the ability of a company to meet its financial obligations and continue its business. In determining whether an entity is solvent, I evaluate a number of factors, including its obligations, income, and other matters stated in the preceding paragraph, along with its liquidity. In the case of these entities, income and liquidity is primarily by the demonstrated ability to sell portions of the FCC license assets in the market for large capital gains on a regular basis.

Nunez Declaration [RJN, Ex. "4"], ¶ 5, page 2, lines 15-21.[4]

---

[4] Mr. Nunez' analysis and methodology was supported by the Delangis Declaration [RJN, Ex. "5"], also submitted by Skybridge and the Related Entities in opposition to the Renewal Receivership Motion. Specifically, Mr. Delangis opined that ". . . in paragraph 5 of his declaration, Mr. Nunez correctly summarizes financial solvency and the factors described to consider for determining solvency. Stated another way, when evaluating solvency, an analyst will determine if an entity has sufficient resources (assets) to satisfy its debts as they become due." Delangis Declaration, ¶ 5.

8

23.     In the same proceeding, Havens offered his own sworn declaration (the "Havens Receivership Declaration"), in which he testified that Skybridge and the Related Entities ". . . are solvent. They have no outside debt. They are extraordinarily valuable." (Emphasis added) Havens Receivership Declaration [RJN, Ex. "3"], ¶ 27, page 8, lines 17-18.

24.     The fact that Skybridge has "no outside debt" is explained in the Garrity Declaration [RJN, Ex. "6"], submitted by the Subject Entities in opposition to the Renewed Receivership Motion, and a declaration by Havens (the "Havens Atlis Declaration") appended as an exhibit to the Garrity Declaration. Specifically, Havens describes the functions of Atlis Wireless LLC ("Atlis"), one of the Related Entities. He testifies that Atlis was established to provide "basic operational services to the Holding LLCs," which services include, *inter alia*: "securing and maintaining an operations office and staff;" "securing and maintaining outside professional and other services (legal, accounting, technical, etc.);" and "paying for the preceding and other bills and obligations."[5]

25.     The Voluntary Petition discloses that the "Debtor has *de minimis* trade debt." Voluntary Petition [RJN, Ex. "13"], at page 33 of 35. The Voluntary Petition does not disclose a single undisputed debt owed to the Debtor's purported twenty largest unsecured creditors. Many of these disputed claims relate to "professional services," which Havens has testified are "secured and maintained" by Atlis. Indeed, despite Havens' testimony that Atlis did

---

[5] Although Havens testified that the foregoing services were not provided to Skybridge (Havens Atlis Declaration, footnote 2), in the Ip Declaration [RJN, Ex. "9"], also filed in connection with the Renewed Receivership Motion, Leong's forensic accountant, Monica Ip, identified a series of transactions in which Atlis paid expenditures purportedly incurred for the benefit of Skybridge. Ip Declaration, ¶¶ 13, 28, 36 and 45.

9

not provide services for Skybridge, Atlis is listed as a contingent and unliquidated creditor of Skybridge.

26.    The Receiver currently has on hand more than $1.4 million in cash ostensibly held for the account of Skybridge.  Uecker Declaration, ¶ 2.

27.    Skybridge's 2012 tax return (the "2012 Tax Return") filed with the Voluntary Petition (which the Debtor represents is the most current available) [RJN, Ex. "13"] shows income for that year of $59,450 ($43,752 relating to a net gain on sale of assets and $15,698 derived from an alleged subsidiary) and total expenses for the year (excluding amortization) of $90,202, of which $86,319 represented tax liabilities. The return also represents that the value of Skybridge's assets totaled almost $63 million. The fact that the Debtor is unable to submit more current financial information is indicative of the manner in which Havens runs this, and related entities.

28.    As noted by Mr. Nunez in the Nunez Declaration and as evidenced by the 2012 Tax Return, income and liquidity for Skybridge is derived primarily from the sale of "portions of the FCC License assets."

29.    Skybridge has no paid employees or payroll. Havens First Day Declaration at ¶ 4 [RJN, Ex. "15"].

30.    The Debtor acknowledges that it obtained the majority of the "portions" of FCC Licenses owned by it "via charitable-donation assignments" from the Related Entities, including those in which Leong has an undisputed interest. Havens First Day Declaration, ¶ 1 [RJN, Ex. "15"].

31.     Aside from holding certain portions of the FCC Licenses (the "Skybridge FCC License Portions"), the Debtor appears to have no activities or operations other than engaging in what Havens describes as "joint venture plans and developments." Havens First Day Declaration, ¶ 7 [RJN, Ex. "15"].

**C.    The Reasons For Filing the Voluntary Petition**

32.     In the Havens First Day Declaration, Havens offers no reason for commencing this Bankruptcy Case other than the "improvidently granted receivership" and the fact that the Receiver has been authorized by the Superior Court to sell certain of the FCC Licenses (all subject to imminent deadlines), including some held by Skybridge. Havens First Day Declaration, ¶ ¶ 19-20 [RJN, Ex. "15"]. Havens admits that the purpose of filing the Bankruptcy Case is to prevent the Receiver from carrying out this mandate and to dispossess her of Skybridge's assets. *Id.*

33.     The Receiver has possession and control of all of the FCC Licenses. Through this Bankruptcy Case, Havens seeks, and can only seek to wrest control of the Skybridge FCC License Portions from the Receiver.

34.     However, in opposing the Sale Motion, Havens represented to the Superior Court that the value of the FCC Licenses "is a large multiple of the value of each licenses [*sic*] added together. This 'whole' is worth far more than the 'sum of its parts.'" Sale Opposition [RJN, Ex. "11"], page 2, lines 16-18.

35.     Conversely, Havens also represented to the Superior Court that "Skybridge is a critical part of the maintenance of the licenses held by other for-profit entities,"

11

*i.e.*, the Related Entities. Sale Opposition [RJN, Ex. "11"], page 9, lines 14-15. Thus, Skybridge

and Havens have admitted that the commencement of this Bankruptcy Case is not only

detrimental to the value of Skybridge's assets but also to the value of all of the assets owned by

the Related Entities, which will continue to be held by the Receiver.

36.    The Debtor's only intended reorganization goal is "to resume its

operations pursuant to the common business plan" supposedly adopted by Havens for the Subject

Entities. Debtor's Relief from Stay Opposition [RJN, Ex. "14"], at ¶ 9. However, as noted above,

all the Debtor can possibly hope to regain control of through the Bankruptcy Case are the

Skybridge FCC License Portions. The remainder of the FCC Licenses, which are a part of the so-

called "common business plan," will remain with the Receiver.

## RELIEF REQUESTED

37.    By this Motion, Leong seeks the entry of an order, pursuant to 11 U.S.C.

§§ 1112(b) and/or 305(a), dismissing the Bankruptcy Case for cause and/or in the best interest of

the Debtor and its creditors, or for abstention. Leong further requests that such dismissal be with

prejudice pursuant to 11 U.S.C. § 349(a) of the Bankruptcy Code.

## ARGUMENT AND AUTHORITY

**I.    THE BANKRUPTCY CASE SHOULD BE DISMISSED FOR "CAUSE"
PURSUANT TO SECTION 1112(b) OF THE BANKRUPTCY CODE.**

38.    "[O]n request of a party in interest, and after notice and a hearing, the

court *shall* convert a case under this chapter to a case under chapter 7 or dismiss a case under

this chapter, whichever is in the best interests of creditors and the estate, for cause." *See*

12

11 U.S.C. § 1112(b)(1) (emphasis added). Section 1112 includes a non- exhaustive list of what

constitutes "cause." *See* 11 U.S.C § 1112(B)(4)(A)-(P); *see also Official Comm. of Unsecured*

*Creditors v. Nucor Corp. (In re SGL Carbon Corp.)*, 200 F.3d 154, 160 (3d Cir. 1999). In

addition to the list enumerated in Section 1112(b)(4), cause exists to dismiss a case when the

petition was filed in bad faith. *See In re 15375 Memorial Corp.*, 589 F.3d 605, 618 (3d Cir.

2009); *SGL Carbon Corp.*, 200 F.3d at 160; *In re Little Creek Dev. Co. v. Commonwealth*

*Mortgage Corp. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1072 (5th Cir. 1986).

### A. Cause Exists to Dismiss the Bankruptcy Case Because it was Filed in Bad Faith.

39.    Bankruptcy petitions are "subject to dismissal under 11 U.S.C. § 1112(b)

unless filed in good faith and the burden is on the bankruptcy petitioner to establish good faith."

*See 15375 Memorial Corp.*, 589 F.3d at 618; *NMSBPCSLDHB, L.P. v. Integrated Telecom*

*Express, Inc. (In re Integrated Telecom Express, Inc.)*, 384 F.3d 108, 118 (3d Cir. 2004); *SGL*

*Carbon Corp.*, 200 F.3d at 162 n.10; *In re JER/Jameson Mezz Borrowers II, LLC*, 461 B.R. 293,

298 (Bankr. D. Del. 2011). The determination of "[w]hether the good faith requirement has

been satisfied is a 'fact intensive inquiry' in which the court must examine 'the totality of

facts and circumstances' and determine where a 'petition falls along the spectrum ranging from

the clearly acceptable to the patently abusive.'" *15375 Memorial Corp.*, 589 F.3d at 618; *Little*

*Creek Dev. Corp.*, 779 F.2d at 1072 ("Determining whether the debtor's filing for relief is in

good faith depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's

financial condition, motives, and the local financial realities.). In determining whether "good

faith" exists, the Third Circuit utilizes "an objective analysis of whether the debtor has sought

13

to step outside the 'equitable limitations' of Chapter 11 than the subjective intent of the debtor." *See 15375 Memorial Corp.*, 589 F.3d at 618 n.8; *JER/Jameson Mezz Borrower II, LLC*, 461 B.R. at 298 (specifically rejecting the Second Circuit's emphasis on the subjective good faith of the Debtor and emphasizing the Third Circuit's "objective analysis" standard).

40.     The Third Circuit has specified two requirements for a debtor to prove that its petition was filed in "good faith." First, the bankruptcy petition must "serve[] a valid bankruptcy purpose." *See Integrated Telecom Express, Inc.*, 384 F.3d at 120.; *15375 Memorial Corp.*, 589 F.3d at 618; *SGL Carbon Corp.*, 200 F.3d at 165. Second, the bankruptcy petitions cannot be filed "merely to obtain a tactical litigation advantage." *See 15375 Memorial Corp.*, 58 F.3d at 618. Because the Bankruptcy Cases do not serve a valid bankruptcy purpose and were filed solely to obtain a tactical litigation advantage, the Court should dismiss each of the cases, with prejudice.

*i.       The Bankruptcy Case serves no valid bankruptcy purpose.*

41.     The proper purpose for commencing a Chapter 11 case is "preserving going concerns and . . . maximizing property available to satisfy creditors." *See Integrated Telecom Express, Inc.*, 384 F.3d at 119 (citing *Bank of Am. Nat'l Trust & Sav. Assn. v. 203 N. LaSalle St. P'Ship*, 526 U.S. 434, 453 (1999)). When the debtor lacks a "valid bankruptcy purpose" for its filing, a presumption arises that the case was not filed in good faith. *See 15375 Memorial Corp.*, 589 F.3d at 618 (a relevant question in determining questions of good faith is "whether the petition serves a valid bankruptcy purpose"); *Integrated Telecom Express, Inc.*, 384 F.3d at 118; *see also In re Mirant Corp.*, 2005 WL 2148362 (Bankr. N.D. Tex. Jan. 26, 2005);

14

*Cedar Shore Resort, Inc. v. Mueller (In re Cedar Shore Resort, Inc.)*, 235 F.3d 375 (8th Cir. 2000) (case dismissed because avoiding litigation was not a valid bankruptcy purpose); *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 829 (9th Cir. 1994) (case dismissed because filing bankruptcy to avoid posting an affordable appeal bond was bad faith); *In re SGL Carbon Corp.*, 200 F.3d at 162 (holding that chapter 11 case filed by financially healthy company solely to gain a tactical advantage in litigation was in bad faith).

42.    The Debtor has admitted that it is solvent, that it has no "outside debt" and that its assets are "extraordinarily valuable." According to Skybridge, it has no owners.  The Receiver has testified that Skybridge has more than $1.6 million of cash on hand. The 2012 Tax Return filed with the Voluntary Petition indicates that in that year, the Debtor's annual expenses totaled a little more than $90,000.

43.    In order to carry its burden that the chapter 11 case maximizes the value of the entity, the Debtor must show that there is "some value that otherwise would be lost outside of bankruptcy." *See Integrated Telecom*, 384 F.3d at 120; *In re JER/Jameson Mezz Borrowers II, LLC*, 461 B.R. at 303. Put another way, to "maximize property of the estate" the bankruptcy must "create or preserve some value that would be lost-not merely distributed to a different stakeholder-outside of bankruptcy. *Integrated Telecom*, 384 F.3d at 129.

44.    The Debtor has admitted that the sole purpose of this Bankruptcy Case is to displace the Receiver from possession of the Skybridge FCC License Portions. The Bankruptcy Case cannot, and will not have the effect of dispossessing the Receiver from possession and control over the FCC Licenses owned by the Related Entities, as those licenses

15

are not property of the Estate and are beyond the jurisdiction of this Court. *See In re South Jersey Land Corp.,* 361 F.2d 610 (3d Cir. 1966) (in general, and absent unusual circumstances, the property of a debtor's subsidiary is not considered property of the debtor by virtue of the debtor's sole ownership of the subsidiary); *see also Parkview-Gem, Inc. v. Stein (In re Parkview Gem),* 516 F.2d 807 (8th Cir. 1975); *In re Unishops Inc.,* 494 F.2d 689 (2d Cir. 1979) (*per curiam*); *In re Beck Industries, Inc.,* 479 F.2d 410 (2d Cir.), *cert. denied,* 414 U.S. 858 (1973); *General American Tank Car Corp. v. Gobel (In re Gobel),* 80 F.2d 849 (2d Cir. 1936). Thus, if successful, this Bankruptcy Case will have the effect of separating possession and control of portions of FCC Licenses owned by the Debtor from the remaining interests owned by the Related Entities.

45.     Havens has represented to the Superior Court that the value of all of the FCC Licenses "is worth far more than the 'sum of its parts'." By the same token, the Debtor has conceded that by attempting to separate possession and control of the FCC Licenses owned by Skybridge, on the one hand, and the Related Entities, on the other hand, its efforts will in fact result in a diminution of the value of the FCC Licenses held by all of them, the antithesis of a valid purpose and goal for a chapter 11 proceeding.

        *ii.*    **The Bankruptcy Case was filed primarily to obtain a tactical litigation advantage.**

46.     A chapter 11 case is subject to dismissal if it was commenced primarily to obtain a tactical litigation advantage. *See 15375 Memorial,* 589 F.3d at 605; *SGL Carbon,* 200 F.3d at 165; *JER/Jameson Mezz Borrowers II, LLC,* 461 B.R. at 300. In this instance, the Bankruptcy Case was filed solely for the purpose of displacing the Receiver's possession and

control over the Skybridge FCC License Portions and, in particular, to impede the Sale Order.

Havens has testified that he took this action on behalf of Skybridge because he believes that the

receivership was "improvidently granted" and that "if left unchecked," the Receiver's actions

will undermine or jeopardize his unspecified "joint venture plans and developments" for the

Skybridge FCC License Portions.[6]

47.    On the day the Voluntary Petition was filed, the Debtor filed a verified

petition (the "Skybridge/FCC Petition") with the FCC, seeking to reverse a transfer of the FCC

Licenses to the Receiver [RJN, Ex. "16"].  The Skybridge/FCC Petition contended that without

the commencement of the Bankruptcy Case, ". . . presentation of this Petition would arguably be

in violation of" the Receivership Order. [Skybridge/FCC Petition, Section IV.]

48.    The Debtor has stated that its reorganization plan is "to resume its

operations pursuant to the common business plan" developed by Havens. At the same time,

however, Havens has also represented that "[t]o a significant degree [the Arbitration] is a dispute

regarding business strategy, accompanied by a dispute over the existence and extent of Leong's

interest." Taken together, these acknowledgements indicate beyond any reasonable doubt that the

sole purpose of the Bankruptcy Case is to derail the Arbitration Proceeding and the Receivership.

To the extent merited, remedies are available to Skybridge and Havens in those proceedings and

there is no valid purpose or reason for invoking the jurisdiction of this Court.

     *iii.*     ***An analysis of the traditional "bad faith" factors indicates the Bankruptcy Cases were not filed in good faith.***

---

[6] Overlooked by Skybridge in this assertion is its admission to the Superior Court, through the Nunez Declaration, that "in the case of [the Subject Entities], income and liquidity is primarily [*sic*] by the demonstrated ability to sell portions of the FCC License assets in the market for large capital gains on a regular basis." *Id.*, at ¶ 5, page 2, lines 19-20. Skybridge admitted to the Superior Court that its business plan involves the liquidation of its assets "on a regular basis."

49.     In order to assist in determining whether a case was filed in bad faith, courts often look for evidence of various factors, including: (i) **single asset case**; (ii) **few unsecured creditors**; (iii) **no ongoing business or employees**; (iv) **petition filed on eve of foreclosure**; (v) **two party dispute which can be resolved in pending state court action**; (vi) **no cash or income**; (vii) **no pressure from non-moving creditors**; (viii) previous bankruptcy petition; (ix) **prepetition conduct was improper**; (x) **no possibility of reorganization**; (xi) debtor formed immediately prepetition; (xii) **debtor filed solely to create automatic stay**; and (xiii) **subjective intent of the debtor**. *See Primestone Inves. Partners L.P. v. Vornado PS, L.L.C. (In re Primestone Inves. Partners L.P.)*, 272 B.R. 554, 557 (Bankr. D. Del. 2002) (emphasis added); *JER/Jameson Mezz Borrowers II, LLC*, 461 B.R. at 298-99; *accord In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394-95 (11th Cir. 1988); *In re Little Creek Dev. Co.*, 779 F.2d at 1072. No single factor should dictate, but rather it is the totality of the circumstances that determines whether to dismiss. *See Primestone*, 272 B.R. at 558; *In re Natural Land Corp.*, 825 F.2d 296, 298 (11th Cir. 1987) (holding there is no "single factor that will necessarily lead to a finding of bad faith"); *In re American Property Corp.*, 44 B.R. 180, 182 (Bankr. M.D. Fla. 1988) ("no one factor . . . determinative of good faith.").

50.     Here, a majority of the factors are patently present. The Debtor has asserted that, in order to maximize value, the FCC Licenses must be treated as a single asset. The Debtor has "no outside debt" and apparently no owners. The Debtor has no paid employees, no payroll and no ongoing business; alleged "joint venture plans and developments" do not constitute a continuous, day-to-day operation or activity. While the Voluntary Petition was not

DOCS_LA:297964.5 52131/001

filed on the eve of foreclosure, it was filed on the eve of, and in order to foreclose a similar

activity, namely the sale by the Receiver of some of the Skybridge FCC License Portions.

51.    The instant dispute is primarily a "two-party dispute" between Leong and

Havens over the ownership and control of the FCC Licenses and has been pending both before

the Superior Court and in the Arbitration Proceeding for almost 14 years. There are no creditors

to protect in this dispute (at least no creditors who are supporting Skybridge's efforts to obtain

Bankruptcy Court protection) and, to the extent any may exist, there is more than adequate cash

to satisfy their claims.[7] Skybridge and Havens can seek all the relief they believe they are

entitled to in the existing proceedings and are not entitled to invoke the jurisdiction of this Court

in order to gain a perceived advantage.

52.    While the Debtor has significant cash (held by the Receiver), it has no

income to speak of. The 2012 Tax Return discloses annual income for that year totaling less than

$60,000, more than two-thirds of which was generated from the sale of assets. As Mr. Nunez

testified to the Superior Court, the only means for the Debtor to generate income and liquidity is

by selling assets.

53.    The Voluntary Petition was not filed in response to pressure from non-

moving creditors, to the extent any such creditors in fact exist. There appears to have been no

reason for the filing other than to disrupt the Receiver's activities, and, in particular, to prevent

the Receiver from selling some of the Skybridge FCC License Portions. Further, the filing of the

---

[7] In fact, Puget Sound Energy, Inc., which asserts a claim against the Debtor and some of its affiliates, has indicated that it supports Leong's request that this case be dismissed, expressing a greater confidence in the Receiver to address its disputed claims than the Debtor. [Dkt. Nos. 42, 43].

Voluntary Petition was not Skybridge's first effort to disrupt the receivership process. It had

previously purported to remove the Action to the District Court, without any legal basis or

justification.

54.    The Debtor, through Havens, has clearly engaged in improper pre-petition

conduct. As set forth in the Renewed Receivership Motion, Havens has failed to keep proper

accounting records and to adequately report to Leong regarding Skybridge and the Related

Entities. He has improperly and unlawfully moved assets between the Subject Entities in order to

evade Leong's rightful claims to those assets. He has also engaged in unprecedented conduct

before the FCC which significantly puts at risk the Subject Entities' ownership of the FCC

Licenses.[8]

55.    In this instance, there is no possibility of reorganization because no

reorganization is necessary. As noted above, the Debtor no third party creditors and has more

than adequate cash to satisfy any claims. While Havens speaks of attempting "a successful

reorganization," aside from making this conclusory statement, he does not identify any financial

issues which require reorganization nor how the Bankruptcy Case will address them.

56.    Rather, the Debtor "filed solely to create automatic stay" and to demand a

turnover of the Skybridge FCC License Portions from the Receiver.

57.    It is clear from the Havens First Day Declaration and all of the

surrounding circumstances that the Voluntary Petition was filed solely for the purpose of

---

[8] As more fully set forth in the Joinder of Puget Sound Energy, Inc. to Leong's motion, inter alia, excusing the Receiver from compliance with Bankruptcy Code § 543, Havens' litigation practices extend far beyond those before the FCC pertaining to Skybridge and the Related Entities. [Dkt. No. 42].

DOCS_LA:297964.5 52131/001

disrupting the Receiver's activities and in an effort to gain leverage and advantage in the long-standing two-party dispute between Havens and Leong.

## II.    ALTERNATIVELY, THE COURT SHOULD ABSTAIN FROM HEARING THIS CASE AND DISMISS IT PURSUANT TO SECTION 305(a) OF THE BANKRUPTCY CODE

58.    Section 305(a)(1) of the Bankruptcy Code provides that a court, "after notice and hearing, may dismiss a case under this title or may suspend all proceedings in a case under this title, at any time if . . . the interest of creditors and the debtor would be better served by such dismissal." *See* 11 U.S.C. § 305(a)(1). The decision to dismiss a bankruptcy case under section 305(a)(1) is left to the discretion of the bankruptcy judge and is not reviewable on appeal. *See* 11 U.S.C. § 305(c); *In re Monitor Single Lift I, Ltd.*, 381 B.R. 455, 463 (Bankr. S.D.N.Y. 2008); *Pennino v. Evergreen Presbyterian Ministries (In re Pennino)*, 299 B.R. 536, 538 (B.A.P. 8th Cir. 2003); *Steinman v. Spencer (In re Argus Group 1700, Inc.)*, 206 B.R. 737, 755 (Bankr. E.D. Pa. 1996). The movant bears the burden of demonstrating that the interests of the Debtor and its creditors would benefit from dismissal. *See In re AMC Investors, LLC*, 406 B.R. 478, 487 (Bankr. Del. 2009); *Monitor Single Lift I*, 381 B.R. 462-63.

59.    As with determining "good faith" under Section 1112(b), courts look at a number of factors to determine whether abstention and dismissal under Section 305(a)(1) is in the best interest of creditors. *See AMC Investors, LLC*, 406 B.R. at 488. Such factors include: (i) the economy and efficient administration; (ii) whether another forum is available to protect the interests of both parties or if there is already a pending proceeding in state court; (iii) whether federal proceedings are necessary to reach a just and equitable solution; (iv) whether there is an

21

alternative means of achieving equitable distribution of assets; (v) whether the debtor and the creditors are able to work out a less expensive out - of-court arrangement which better serves all interests in the case; (vi) whether a non-federal insolvency has proceeded so far that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (vii) the purpose for which bankruptcy jurisdiction has been sought. *See id.*; *In re Paper I Partners, L.P.*, 283 B.R. 661, 679 (Bankr. S.D.N.Y. 2002); *Argus Group 1700, Inc.*, 206 B.R. at 755.

60.    Practically all of the factors weigh in favor of abstention and dismissal. The dispute between the real parties in interest, Leong and Havens, has been pending before another forum for almost 14 years and the Arbitration is moving forward. The Receiver has been appointed to protect the rights of all concerned.

61.    The Receiver will be more economical and efficient because she does not have to comply with the numerous provisions and requirements of the Bankruptcy Code. *See In re Argus Group 1700, Inc.*, 206 B.R. at 756 (finding that bankruptcy likely causes "needless additional expenses" because the debtors would need to be represented by specialized bankruptcy counsel). The receivership is an alternative means for achieving a distribution of assets and is evidence that federal proceedings are not necessary to reach a just and equitable solution. *See Monsour Medical Ctr., Inc. v. Stein (In re Monsour Medical Ctr., Inc.)*, 154 B.R. 201, 203 (Bankr. W.D. Pa. 1993) (dismissing case under section 305(a)(1) to allow state court receivership to proceed primarily because it appeared no plan would be confirmable without the support of the party seeking dismissal under section 305(a)(1)).

62.     This Court is not in a position to grant Skybridge or Havens any relief they could not otherwise seek either in the Action or in the Arbitration Proceeding. Indeed, this Court's powers are far more limited than those of the Superior Court, in that it only has jurisdiction over the assets of Skybridge, whereas the Superior Court has jurisdiction over all of the remaining FCC Licenses.

63.     Skybridge's only reorganization goal is to regain control of the Skybridge FCC License Portions, despite the fact that Skybridge and Havens have conceded that those licenses, on their own, are worth less than if aggregated with all of the FCC Licenses owned by the Related Entities who are not the subject of this Bankruptcy Case. The Debtor's avowed purpose, to frustrate the efforts of the Receiver, is not a valid bankruptcy purpose and justifies dismissal under Section 305(a)(1). *See In re Fast Food Props., Ltd. #1*, 5 B.R. 539, 540 (Bankr. C.D. Cal. 1980).

64.     Finally, courts in this district have held that "[d]ismissal or suspension of a case may be appropriate when the bankruptcy case constitutes a two-party dispute . . . ." *See AMC Investors, LLC*, 406 B.R. at 488. When relief is available in a non-bankruptcy forum to resolve a two-party dispute, courts should abstain and dismiss the case. *Id*. As described above, the Bankruptcy Case falls squarely within these confines and, accordingly, this Court must either dismiss the case or abstain in favor of the pending proceedings.

## III.    DISMISSAL OF THE CHAPTER 11 CASE SHOULD BE WITH PREJUDICE PURSUANT TO SECTIONS 105(a) AND 349(a) OF THE BANKRUPTCY CODE.

65.     Section 349 of the Bankruptcy Code specifies: "[u]nless the court, for cause, orders otherwise, the dismissal of a case under this title does not . . . prejudice the debtor

23

with regard to the filing of a subsequent petition under this title, except as provided in section

109(g) of this title." *See* 11 U.S.C. § 349(a). Section 105(a) of the Bankruptcy Code allows

courts to "tak[e] any action or mak[e] any determination necessary or appropriate to enforce or

implement court orders or rules, *or to prevent an abuse of process.*" *See* 11 U.S.C. § 105(a)

(emphasis added). Reading these two statutes together, courts have found that they may dismiss a

chapter 11 case with prejudice and proscribe subsequent filing, where the debtor has commenced

its bankruptcy case for an improper purpose and in bad faith. *See In re Casse*, 198 F.3d 327, 336-

39 (2d Cir. 1999); *In re JER/Jameson Mezz Borrowers II, LLC*, 461 B.R. at 304.

      66.    More than ample cause exists in this case to dismiss the Bankruptcy Case

with prejudice based upon the fact that it has been filed in bad faith, as a litigation tactic and for

no valid reorganization purpose.

## NOTICE

      67.    Notice of this Motion has been provided to: (i) counsel for the United

States Trustee for the District of Delaware; (ii) counsel for the Debtor; (iii) all parties who have

filed appearances in the Debtor's Bankruptcy Cases; and (iv) each of the creditors listed on the

Debtor's creditor matrix.

DOCS_LA:297964.5 52131/001

## CONCLUSION

68.     For the foregoing reasons, Leong respectfully requests entry of an order, substantially in the form attached hereto as **Exhibit A**, (i) dismissing the Debtor's Bankruptcy Case pursuant to §§ 1112(b) and/or 305(a) of the Bankruptcy Code, with prejudice, and (ii) granting such other relief as may be just and appropriate.


Dated: April 15, 2016                    PACHULSKI STANG ZIEHL & JONES LLP


                                         /s/ Peter J. Keane
                                         Dean A. Ziehl (CA Bar No. 84529)
                                         Jeremy V. Richards (CA Bar No. 102300)
                                         Bradford J. Sandler (DE Bar No. 4142)
                                         Peter J. Keane (DE Bar No. 5503)
                                         919 North Market Street, 17th Floor
                                         P.O. Box 8705
                                         Wilmington, DE 19899-8705 (Courier 19801)
                                         Telephone: (302) 652-4100
                                         Facsimile: (302) 652-4400
                                         Email: dziehl@pszjlaw.com
                                                jrichards@pszjlaw.com
                                                bsandler@pszjlaw.com
                                                pkeane@pszjlaw.com

                                         Counsel to Dr. Arnold Leong