# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>Skybridge Spectrum Foundation,<br><br>Debtor.[1] | Chapter 11<br><br>Case No. 16-10626 (CSS)<br><br>**Hearing Date:**<br>May 6, 2016, at 1:00 p.m. (ET)<br>**Objection Deadline:**<br>April 29, 2016 at 4:00 p.m. (ET) |

**MOTION OF SUSAN L. UECKER, THE COURT-APPOINTED RECEIVER, FOR ENTRY OF AN ORDER PRESERVING THE STATUS QUO OF THE RECEIVERSHIP PENDING A HEARING ON EXCUSAL FROM COMPLIANCE WITH SECTION 543 OF THE BANKRUPTCY CODE AND DR. LEONG'S MOTION TO DISMISS THE BANKRUPTCY CASE**

Susan L. Uecker, as the court-appointed receiver (the "Receiver") of Skybridge Spectrum Foundation ("Skybridge" or the "Debtor"), by and through her undersigned counsel, hereby moves the Court (the "Motion") for the entry of the order attached hereto as **Exhibit A** preserving the status quo of the Receivership (defined below) pending a hearing on the *Motion of Dr. Arnold Leong for Order: (A) Excusing Receiver from Compliance with Section 543 of the Bankruptcy Code; and (B) Granting Relief from the Automatic Stay Pursuant to Section 362 of the Bankruptcy Code* (the "Section 543 Motion") (D.I. 23) pursuant to section 543 of chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code") and the Motion to Dismiss the Debtor's bankruptcy case filed by Dr. Arnold Leong (the "Motion to Dismiss"). In support of the Motion, the Receiver respectfully states as follows:

---

[1] The last four digits of the Debtor's federal tax identification number are 8487. The Debtor's address is 2509 Stuart Street, Berkeley, CA 94705.

**JURISDICTION**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1049. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. The statutory basis for the relief sought herein is section 543 of the Bankruptcy Code.

**BACKGROUND**

3. On November 16, 2015, Susan L. Uecker was appointed as Receiver (the "Receivership") of the Debtor and certain other affiliated entities[2] (collectively, the "Receivership Entities") by an order (the "Receivership Order") entered by the Superior Court of California, County of Alameda (the "Superior Court"). A copy of the order, as amended, is annexed hereto as **Exhibit B**. Prior to the Receiver's appointment, the Receivership Entities were controlled by Warren Havens ("Havens").

4. The Receivership Order outlines the general duties and powers of the Receiver which include (a) taking possession of and managing the property of the Receivership Entities, (b) collecting income from the property, (c) caring for the property and incurring the necessary related expenses, and (d) changing the locks on the property. Exh. B at 2, ¶ 7. Approximately 5,500 Federal Communications Commission ("FCC") wireless spectrum licenses (the "FCC Licenses") were transferred to the Receiver pursuant to the Receivership Order, of which the Debtor allegedly owns 1,1115 of the FCC Licenses (plus 352 leases). Many of the FCC Licenses

---

[2] In addition to Debtor, the Receivership Entities include Environmentel LLC, Environmentel 2 LLC, Verde Systems LLC, Intelligent Transportation and Monitoring Wireless LLC, Telesaurus Holdings GB LLC, and V2G LLC.

held by the Debtor and the other Receivership Entities are intended to be, and have the greatest value when, used together.

5. The Receiverership Order also grants the Receiver specific powers relating to the FCC Licenses:

> As soon as possible, at her discretion, the Receiver shall execute and file with the Federal Communications Commission (the "FCC") all notices, applications, reports or other documentation necessary to establish the Receiver's control over all FCC authorizations, permits, or licenses (identified in Tab 1 to Attachment 1 and collectively referred to as the "FCC Licenses") and to, at her discretion, take such other actions with respect to the FCC as may be necessary or appropriate . . . .

Exh. B at 38, ¶ 1 to Attachment 27.

6. The Receivership Order provided that the FCC Licenses would be transferred to the Receiver and that she would be substituted as "the individual responsible for the management of the FCC Licenses and the Receivership Entities." Exh. B at 5, ¶ 28(e)(7). When the FCC Licenses were transferred from the Receivership Entities to the Receiver, the Receivership Entities were required to pay transfer fees of approximately $319,000. Approximately $41,290 represents transfer fees for the FCC Licenses allegedly owned by the Debtor.

7. The Receiver and her professionals, whose retentions were approved by the Superior Court, have not been paid for their services in preserving the receivership assets since her appointment on November 16, 2015. The Superior Court approved payment of the Receiver's fees and expenses through December 2015 pursuant to a March 10, 2016, fee order in the amounts of $32,682.28 for the Receiver and $263,129.27 for her primary outside counsel, Sheppard, Mullin, Richter & Hampton LLP. The Debtor filed for bankruptcy the following day, staying the payment from the Debtor. As Mr. Havens allocated the majority of the monies held by the Receivership Entities to Skybridge but had the other Receivership Entities pay the vast

majority of expenses (based upon some unknown theory) notwithstanding that the Receivership Entities represent a consolidated enterprise, the Debtor's bankruptcy filing significantly impedes the Receiver's ability to carry out her duties mandated by the Superior Court. If this bankruptcy case is not dismissed, the Receiver will seek pre- and post-petition fees from the Debtor's estate pursuant to section 543 of the Bankruptcy Code.

8. On March 11, 2016 (the "Petition Date"), Havens filed a chapter 11 petition for the Debtor.

9. On March 14, 2016, the Debtor filed a Suggestion of Bankruptcy and sent a letter to the Receiver requesting that she immediately (i) cease and desist making disbursements from, or administering, the Debtor's estate, except as necessary to preserve such property, (ii) turn over and deliver any property of the Debtor held by the Receiver, including bank accounts and control of all FCC Licenses owned by the Debtor, and (iii) file an accounting.

10. The Receivership Order provides that upon the Receiver receiving notice of a bankruptcy filing involving property subject to the Receivership Order: (a) the Receiver shall determine whether the party who obtained the appointment of the Receiver intends to move for an order from relief from stay and relief from the Receiver's obligation to turn over property under section 543 of the Bankruptcy Code; (b) if so, the Receiver may remain in possession of the property for purposes of preserving the property pending a ruling; and (c) if the party obtaining the appointment of the Receiver does not file a motion in the bankruptcy case within ten court days after notice of the bankruptcy filing, the Receiver shall immediately turn over the property to the appropriate entity (a trustee or debtor in possession) and otherwise comply with section 543 of the Bankruptcy Code. Exh. B at 5, ¶ 25.

11. On March 17, 2016, Dr. Arnold Leong, the party who obtained the Receiver's appointment, advised the Receiver that he intended to file a motion to excuse the Receiver from compliance with the turnover requirements of section 543 of the Bankruptcy Code.

12. On March 18, 2016, the Receiver responded to the Debtor's March 14th letter by providing the Debtor with a financial accounting for the Receivership Entities through February 2016 and representing that, in accordance with the Receivership Order, the Receiver would not turn over the property because Dr. Leong had communicated his intention to file a motion to excuse the Receiver from turnover under section 543(d) of the Bankruptcy Code.

13. On March 25, 2016, Dr. Leong filed the Section 543 Motion,[3] requesting that the Receiver be excused from compliance with the turnover requirements of section 543 of the Bankruptcy Code. Dr. Leong also informed the Receiver that he would be filing the Motion to Dismiss to be heard at the May 6, 2016, hearing.

## RELIEF REQUESTED

14. The Receiver respectfully requests that this Court enter an order permitting the Receiver to retain possession of the Debtor's assets pending a hearing on the Section 543 Motion and the Motion to Dismiss.

## BASIS FOR RELIEF REQUESTED

**A. The Receiver Should Retain Possession Of The Debtor's Property Until A Determination On The Section 543 Motion and Dr. Leong's Motion to Dismiss.**

15. The Court should enter an order permitting the Receiver to retain possession of the Debtor's assets until the Court decides the 543 Motion and the Motion to Dismiss. It would be wasteful and contrary to the objectives and goals of both the receivership and the Bankruptcy

---

[3] On April 1, 2016, Puget Sound Energy, Inc. filed a joinder and supplement to the Section 543 Motion (D.I. 42).

Code – to preserve assets of the estate – to order an irrevocable transfer of assets from the Receiver to the Debtor when the Court will shortly decide whether (a) it is in the best interests of the Debtor for the Receiver to retain custody of the assets and (b) this bankruptcy case should be dismissed.

16. Section 543(a)–(b) of the Bankruptcy Code provides:

> (a) A custodian with knowledge of the commencement of a case under this title concerning the debtor may not make any disbursement from, or take any action in the administration of, property of the debtor, proceeds, product, offspring, rents, or profits of such property, or property of the estate, in the possession, custody, or control of such custodian, except such action as is necessary to preserve such property.
>
> (b) A custodian shall—
>
> (1) deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case; and
>
> (2) file an accounting of any property of the debtor, or proceeds, product, offspring, rents, or profits of such property, that, at any time, came into the possession, custody, or control of such custodian.

17. As the Court is aware, a custodian's appointment is not terminated automatically upon the bankruptcy filing and the Bankruptcy Code authorizes the Court to permit a custodian to continue to exercise possession, custody or control of the debtor's property if it is in the best interests of creditors. 11 U.S.C. § 543(d)(1); *see also In re Dill,* 163 B.R. 221, 226 (E.D.N.Y. 1994) ("[S]ection 543(d)(1) grants the bankruptcy court discretion to excuse the Receiver from complying with the turnover requirements."). Section 543(d)(1) of the Bankruptcy Code provides that:

> After notice and hearing, the bankruptcy court—(1) may excuse compliance with subsection (a), (b), or (c) of this section if the

> interests of creditors and, if the debtor is not insolvent, of equity
> security holders would be better served by permitting a custodian
> to continue in possession, custody, or control of such property . . . .

11 U.S.C. § 543(d)(1). "There is nothing[, however,] in § 543 which specifies the time within which the receiver must deliver up possession of the property. If a motion is timely filed by an interested party to excuse compliance with the turnover provision, then it appears that, pending a hearing, the receiver may retain possession without fear of being cited in contempt." *In re Watkins*, 63 B.R. 46, 48 (Bankr. D. Colo. 1986). If a custodian, however, "surrender[s] possession and control of the property to the [d]ebtor[,]" the court cannot later excuse the custodian's compliance with section 543 of the Bankruptcy Code or revest the debtor's property in the receivership. *Id.* at 47 (finding that because "the custodian is no longer in possession, this Court cannot permit the custodian to 'continue in possession.'").

18. Although, under *Watkins*, the Receiver is automatically excused from seeking Court approval of retaining custody of a debtor's assets pending a ruling on the 543 Motion, the Receiver is filing this Motion out of an abundance of caution in the event that the Court disagrees with the *Watkins* court and concludes that the filing of the Section 543 Motion did not automatically result in a temporary stay of the turnover provisions of section 543 of the Bankruptcy Code.[4] In this case, maintaining the status quo is clearly in the best interests of all creditors and will not result in any harm to the Debtor.

19. First, maintaining the status quo until a disposition of the Section 543 Motion and Motion to Dismiss will promote judicial economy, the parties' resources, and the Debtor's assets because the Court will shortly be deciding potentially case dispositive motions that would moot

---

[4] The Receiver is not aware of any published decisions from this Court concerning whether the filing of a motion to stay turnover under section 543(d) automatically excuses a custodian from compliance with turnover pending a hearing on the stay request.

any requirement to transfer Skybridge's assets from the Receiver to the Debtor. The Debtor is for all practical purposes a non-operating entity and there is no reason to compel the Receiver to transfer books, records, and assets to the Debtor simply to transfer them back to the Debtor if this case (as is expected to occur) is dismissed.[5] Moreover, due to the inability to revest the assets in the Receivership following turnover if it is ultimately determined that the 543 Motion should be granted, *see Watkins*, 63 B.R. 46, 47, to avoid mooting the 543 Motion, it is necessary to decide the 543 Motion on the merits prior to ordering turnover.

20. Second, and perhaps just as important, it potentially would be costly to the Debtor's estate to require the transfer of the FCC Licenses to the Debtor prior to the determination on the Section 543 Motion or the Motion to Dismiss. The Receiver was previously required to pay over $300,000 to transfer the Receivership Estate's FCC Licenses to the Receiver following her appointment, and any future transfer will likely result in the incurrence of additional fees that will need to be paid by the Debtor's estate.[6] *See* 47 C.F.R. § 1.1102. To avoid these potentially unnecessary costs, the Court should maintain the status quo and permit the Receiver to hold the Debtor's assets until the Section 543 Motion and Motion to Dismiss are decided.[7]

---

[5] It should be noted that Mr. Havens retained the original copies of the Debtor's books and records following the appointment of the Receiver.

[6] Obviously, if the Court required the turnover of the FCC licenses at this time and then subsequently dismissed the Debtor's bankruptcy case or granted the 543 Motion, transfer fees may be required to be paid a third time. It clearly would be a waste of resources to require the repeated incurrence of ultimately unnecessary transfer fees.

[7] The Receiver does not anticipate any expenses for Skybridge prior to a determination on the Section 543 Motion. Thus, there is no prejudice or harm to the Debtor in preserving the status quo of the Receivership pending a hearing on the Section 543 Motion.

**B.     If the Status Quo is Not Maintained, the Court Should Require that Any Cash Expenditures from the Debtor be Subject to Court Approval.**

21.     In the alternative, if the Court decides not to preserve the status quo, the Court should restrict the Debtor from making any expenditures absent the Court's approval following notice and a hearing, other than what is approved pursuant to a limited budget, pre-approved by the Court. Significant concerns over Mr. Haven's conduct have been raised in the April 2015 order from FCC Administrative Law Judge Richard J. Sippel[8] and the 543 Motion, and the Court should require some supervision over the dissipation or impairment of the Debtor's assets.

## NOTICE

22.     Notice of this Motion shall be provided to: (a) the Debtor, (b) the Office of the U.S. Trustee, (c) the creditors listed as holding the 20 largest unsecured claims, and (d) all other parties who have requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. It is respectfully submitted that service to these parties is sufficient and adequate notice under the circumstances of this case.

---

[8] Order 15M-14, dated April 22, 2015, in *In the Matter of Maritime Communications/Land Mobile, LLC,* FCC Enforcement Bureau Docket No. 11-71.

**WHEREFORE**, the Receiver respectfully requests that this Court enter an order, substantially in the form annexed hereto as **Exhibit A**, (a) permitting the Receiver to retain the assets of the Debtor pending a hearing on the Section 543 Motion and the Motion to Dismiss, and (b) granting such other and further relief as is just and proper.

Dated: April 15, 2016
     Wilmington, DE

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Tamara K. Minott*
Eric D. Schwartz (No. 3134)
Curtis S. Miller (No. 4593)
Tamara K. Minott (No. 5643)
Marcy J. McLaughlin (No. 6184)
1201 North Market Street, Suite 1800
Wilmington, DE 19801
Telephone: 302.351.9208
Facsimile: 302.425.4672
Email: eschwartz@mnat.com
       cmiller@mnat.com
       tminott@mnat.com
       mmclaughlin@mnat.com

and

SHEPPARD MULLIN RICHTER & HAMPTON LLP
David DeGroot (admitted *pro hac vice*)
Four Embarcadero Center
17th Floor
San Francisco, CA 94111
Telephone: 415.774.3230
Facsimile: 415.434.3947
Email: ddegroot@sheppardmullin.com

9968347

*Counsel for Receiver*